**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

OSCO MOTORS COMPANY, LLC, d/b/a
OSCO MOTORS CORPORATION, and
ENGINE DISTRIBUTORS, INC.

        Plaintiffs,

    v.

MARINE ACQUISITION CORP. d/b/a
SEASTAR SOLUTIONS f/k/a TELEFLEX
MARINE and H.I.G. MIDDLE MARKET,
LLC,

        Defendants.

Case No.: 13-cv-868-RGA

**DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO DISMISS CLAIMS TWO,
THREE AND FOUR, AND TO STAY ALL PROCEEDINGS**

OF COUNSEL:

Jason S. Oletsky (admitted *pro hac vice*)
**AKERMAN SENTERFITT**
350 East Las Olas Blvd., Suite 1600
Ft. Lauderdale, FL  33301
(954) 463-2700
Jason.oletsky@akerman.com

-and-

Scott M. Kessler (admitted *pro hac vice*)
**AKERMAN SENTERFITT LLP**
666 Fifth Avenue, 20th Floor
New York, NY 10103
(212) 880-3800
scott.kessler@akerman.com

Dated:  August 23, 2013

**McCARTER & ENGLISH, LLP**
James J. Freebery (DE #3498)
Daniel J. Brown (DE #4688)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE  19801
Phone:  (302) 984-6300
Fax:  (302) 984-6399

*Attorneys for Defendants Marine
Acquisition Corp. d/b/a Seastar
Solutions f/k/a Teleflex Marine and
H.I.G. Middle Market, LLC*

# **TABLE OF CONTENTS**

**Page(s)**

I.      NATURE AND STAGE OF THE PROCEEDINGS ..........................................................1

II.     SUMMARY OF ARGUMENT .....................................................................................2

      A.      Background ......................................................................................................2

      B.      The Claim........................................................................................................3

III.    STATEMENT OF FACTS ...........................................................................................6

      A.      The Parties .......................................................................................................6

      B.      The Relevant Events ........................................................................................6

IV.     ARGUMENT ...............................................................................................................9

      A.      Legal Standards................................................................................................9

      B.      The Manufacturing Agreement, Confidentiality Agreement and Letters
              of Intent Should be Considered on this Motion to Dismiss ..................................10

      C.      Count Two for Injunctive Relief Should be Dismissed Pursuant to
              Rule 12(b)(6)........................................................................................................10

      D.      Count Three for Breach of Contract Should be Dismissed Pursuant
              To Rule 12(b)(6) ..................................................................................................13

      E.      Count Four for Breach of the Duty to Negotiate in Good Faith
              Should be Dismissed Pursuant to Rule 12(b)(6)....................................................15

      F.      This Action Should be Stayed Pending the Resolution of the
              Arbitration Between Osco/EDI and QM, Currently Scheduled for
              November 11-13, 2013 ........................................................................................17

CONCLUSION.......................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Angstadt v. Midd-West School District,*
    377 F.3d 338 (3d Cir. 2004)...................................................................................10

*Apotex, Inc. v. Senju Pharmaceutical Co., Ltd.,*
    921 F. Supp. 2d 308 (D. Del. 2013)..................................................................10, 19

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).............................................................................................9

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007).............................................................................................9

*Enhanced Security Research, LLC v. Cisco Systems, Inc.,*
    2010 WL 2573925 (D. Del. June 25, 2010)........................................................9, 19

*Giftango, LLC v. Rosenberg,*
    2013 WL 596138 (D. Or. Feb. 15, 2013)...............................................................12

*Intel Corp. v. ULSI System Technology, Inc.,*
    995 F.2d 1566 (Fed. Cir. 1993)............................................................................12

*Kuhn Construction Co. v. Ocean & Coastal Consultants, Inc.,*
    844 F. Supp. 2d 519 (D. Del. 2012)......................................................................19

*Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.,*
    562 F.3d 553 (3d Cir. 2009)............................................................................11, 12

*Maloney v. Gordon,*
    328 F. Supp. 2d 508 (D. Del. 2004)......................................................................18

*Mendez v. Puerto Rican International Companies, Inc.,*
    553 F.3d 709 (3d Cir. 2009).................................................................................18

*Millett v. Truelink, Inc.,*
    533 F. Supp. 2d 479 (D. Del. 2008)......................................................................13

*Morse v. Lower Merion Sch. District,*
    132 F.3d 902 (3d Cir. 1997).................................................................................9

*Spruill v. Gillis,*
    372 F.3d 218 (3d Cir. 2004).................................................................................9

*TruePosition, Inc. v. Allen Telecom, Inc.,*
    2003 WL 151227 (D. Del. Jan. 21, 2003)..............................................................19

*Wilkerson v. New Media Tech. Charter Sch. Inc.*,
    522 F.3d 315 (3d Cir. 2008)..................................................................................................9

**STATE CASES**

*Osborn v. Kemp*,
    991 A.2d 1153 (Del. 2010) ................................................................................................16

*SIGA Technologies, Inc. v. Pharmathene, Inc.*,
    2013 WL 2303303 (Del. May 24, 2013)............................................................................16

**RULES**

Rule 12(b)(1).......................................................................................................................................1

Rule 12(b)(6)............................................................................................................................. passim

## I.   NATURE AND STAGE OF THE PROCEEDING

On May 17, 2013, Plaintiff Osco Motors Company, LLC ("Osco") filed its Complaint (D.I. 1) (the "Complaint") against Defendants Marine Acquisition Corp. d/b/a Seastar Solutions f/k/a Teleflex Marine ("Seastar") and H.I.G. Middle Market, LLC ("HIG") (collectively, "Defendants").  The Complaint contained four causes of action: (1) tortious interference with contractual relations; (2) injunctive relief; (3) breach of contract; and (4) breach of the duty to negotiate in good faith.

On July 22, 2013, Defendants filed a pre-answer motion to dismiss (D.I. 12).  Defendants moved to dismiss the first claim for tortious interference with contractual relations pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) for lack of standing, and to dismiss the remaining three claims pursuant to Rule 12(b)(6) for failure to state a claim.

Instead of responding to Defendants' motion to dismiss, Osco filed an Amended Complaint (D.I. 19) (the "Amended Complaint") on August 6, 2013.  The Amended Complaint, which contains the same four causes of action and virtually identical allegations as the Complaint, adds Osco Motors Corporation, the name under which Osco allegedly does business (Osco and Osco Motors Corporation are collectively referred to as "Osco"), and Engine Distributors, Inc. ("EDI"), Osco's parent company (Osco and EDI are collectively referred to as "Plaintiffs") as plaintiffs.  Upon information and belief, Osco Motors Corporation and EDI were only added to this case as plaintiffs in an attempt to rectify the standing deficiencies that served as the basis for Defendants' motion to dismiss under Rule 12(b)(1).  The addition of these parties has no impact on the merits of this case whatsoever.

Defendants now move to dismiss the second, third and fourth causes of action of the Amended Complaint pursuant to Rule 12(b)(6) for failure to state a claim.  Additionally, Defendants request a stay of this case pending the resolution of a closely-related arbitration

between Osco/EDI and non-party Quality Mark, Inc. ("QM").  The arbitration hearing between Osco/EDI and QM is currently scheduled for November 11-13, 2013 in Minneapolis, Minnesota.

## II.   SUMMARY OF ARGUMENT

This case concerns a company, Osco, that commenced this case in an attempt to (i) re-direct the blame for its failed negotiations to sell the company, (ii) find a scapegoat for its breaches of the payment terms of a contract with QM, and (iii) seek leverage because it no longer has the ability to continue business with one of its largest customers, Seastar.

### A.   Background[1]

Osco is a producer and distributor of various boating products, including marine manifolds.  Amended Complaint ¶ 7 (D.I. 19).  On January 1, 2011, Osco entered into a manufacturing agreement (the "Manufacturing Agreement")[2] with non-party QM, whereby QM would supply Osco with manifolds on an exclusive basis.  *Id.* ¶ 13.

Seastar is an end producer of finished marine boats and boating products.  Amended Complaint ¶ 10 (D.I. 19).  Prior to 2013, Seastar regularly purchased marine manifolds from Osco, who obtained them from QM.  *Id.* ¶¶ 10, 13, 22.

In 2011, Seastar and its partner and equity sponsor, HIG, expressed interest in purchasing Osco.  Amended Complaint ¶¶ 12, 24-25 (D.I. 19).  As part of the negotiations, Osco, EDI, Seastar and HIG entered into a confidentiality agreement (the "Confidentiality Agreement").[3]  *Id.*

---

[1]    For the purposes of this motion to dismiss, the facts as alleged in the Amended Complaint are assumed to be true.  However, Defendants expressly reserve all rights to deny any fact alleged in the Amended Complaint during this litigation.

[2]    A copy of the Manufacturing Agreement is attached to the accompanying Freebery Dec. as Exhibit A.

[3]    A copy of the Confidentiality Agreement is attached to the accompanying Freebery Dec. as Exhibit B.

¶ 25.  Osco, Seastar and HIG also entered into two letters of intent (the "Letters of Intent").[4]  *Id.*

¶ 41.  Although negotiations lasted over a year, Defendants decided against purchasing Osco

sometime in February 2013.  *Id.* ¶ 42.  After discontinuing the due diligence regarding the

purchase of Osco, Seastar placed purchase orders for manifolds directly from QM.  *Id.* ¶ 44.

**B.       The Claim**

Now, Plaintiffs have commenced this lawsuit, seeking compensation for the failed

negotiations and Osco's alleged loss of business.  Plaintiffs claim that during negotiations, and

pursuant to the Confidentiality Agreement, Defendants learned about the exclusive

Manufacturing Agreement between Osco and QM.  Amended Complaint ¶ 35 (D.I. 19).

Plaintiffs further claim that, armed with this information, Seastar approached QM directly and

proceeded to purchase manifolds directly from QM.  *Id.* ¶¶ 37, 44.  In doing so, QM allegedly

violated the Manufacturing Agreement.  Plaintiffs claim to have suffered damages in the form of

lost sales of Osco product to Seastar. *Id.* ¶ 66.

Plaintiffs' second cause of action, which is only asserted against Seastar, seeks a

preliminary injunction preventing Seastar from ordering manifolds directly from QM.  Amended

Complaint ¶¶ 60-70 (D.I. 19).  This claim fails as a matter of law.  First, Plaintiffs have failed to

demonstrate any likelihood of success on the merits.  Second, an injunction cannot be imposed

here because Plaintiffs' claimed injury consists solely of a monetary loss, a loss capable of

recoupment in a proper action at law. Third, an injunction against Seastar constitutes an

unwarranted restriction on Seastar's right to conduct business freely.  Seastar is not a party to the

Manufacturing Agreement.  Nor is Seastar alleged to be a party to any contract requiring it to

purchase manifolds from Osco.  QM's allegedly improper sale of manifolds to Seastar is an issue

---

[4]      Copies of the September 11, 2012 Letter of Intent and January 2013 Letter of Intent are
attached to the accompanying Freebery Dec. as Exhibits C and D, respectively.

more appropriately dealt with in the arbitration between Osco/EDI and QM in Minneapolis, Minnesota, currently scheduled for November 11-13, 2013 . *Id*. ¶ 48.

Plaintiffs' third claim is for breach of the Confidentiality Agreement against Seastar and HIG.  Amended Complaint ¶¶ 71-79 (D.I. 19).   Specifically, Plaintiffs claim that Defendants used their knowledge of the Manufacturing Agreement to obtain manifolds directly from QM. *Id*. ¶ 78.  This claim fails for three reasons.  First, the *use* of confidential information is not prohibited by the Confidentiality Agreement.  Only the *disclosure* of such information is prohibited.   Second, Defendants did not disclose any *confidential information*.   The information Defendants allegedly discussed with QM was already in the possession of, and available to, QM as the other signatory to the Manufacturing Agreement.   Third, Defendants alleged breach of the Confidentiality Agreement was not the proximate cause of any damages.   Since QM was already aware that it had complete control over Osco product, Defendants discussion of this fact (to the extent such discussion actually occurred) with QM could not have caused any damages.  The disclosure of any already known fact was immaterial and harmless.

Plaintiffs' fourth claim is that Defendants breached the duty to negotiate in good faith by discontinuing negotiations to purchase Osco and obtaining manifolds directly from QM. Amended Complaint ¶¶ 80-89 (D.I. 19).  This claim also fails as a matter of law.  There is no statutory or common law duty to negotiate in good faith under Delaware law.  Additionally, neither the Confidentiality Agreement nor the Letters of Intent impose any contractual duty to negotiate in good faith.  In fact, the September 11, 2012 Letter of Intent expressly provides that the parties have *not* agreed to negotiate a definitive contract and that either party may *unilaterally terminate all negotiations without any liability*.  Freebery Dec., Exhibit C (emphasis added).  Furthermore, even if there was a contractual duty to negotiate in good faith, Plaintiffs'

claim for damages in the amount of lost sales of Osco product to Seastar is not a valid form of damages.  In Delaware, the only damages available for a breach of the duty to negotiate in good faith are either reliance damages or expectation damages.  Damages for lost sales of Osco product to Seastar constitute neither.

Finally, following dismissal of Plaintiffs' second, third and fourth causes of action, the Court should stay this case pending the resolution of the arbitration between Osco/EDI and QM, imminently scheduled for November 11-13, 2013.  In that arbitration, the panel will decide, *inter alia*, whether QM breached the Manufacturing Agreement and whether QM was permitted to sell directly to Seastar.  Should QM prevail on these issues in the arbitration, Plaintiffs' claims for tortious interference with contractual relations and injunctive relief both necessarily fail because, without a breach, there can be no viable tortious interference claim.  Additionally, a stay will (i) not cause Plaintiffs any undue prejudice or allow Defendants to gain any tactical advantage; and (ii) simplify and narrow the issues remaining in this case.  This case is still in its earliest stages as no responsive pleading has been filed and no discovery has taken place.  Therefore, a stay is in the best interests of the Court and the parties.

### III.    STATEMENT OF FACTS[5]

**A.    The Parties**

Osco is a producer and distributor of marine engines, manifolds, risers and accessory parts.  Amended Complaint ¶ 7 (D.I. 19).  Osco is a wholly owned subsidiary of EDI.  *Id.* ¶ 8.

Seastar is an end producer of finished marine boats and boating products.  Amended Complaint ¶ 10 (D.I. 19).  Seastar regularly purchased products made by Osco and used those products in its finished marine boats and boating products business.  *Id.* ¶ 10.  HIG is a private equity and venture capital investment firm.  *Id.* ¶ 12.  HIG is also Seastar's partner and equity sponsor.  *Id.*

**B.    The Relevant Events**

On January 1, 2011, Osco entered into the Manufacturing Agreement with QM, whereby QM would produce manifolds for Osco on an exclusive basis.  Amended Complaint ¶ 13 (D.I. 19). Under the Manufacturing Agreement, QM was not permitted to manufacture Osco products for any entity other than Osco, or to sell Osco products directly to any entity other than Osco.  *Id.* ¶ 19.  Osco sold manifolds and other manufactured products to Seastar, which QM produced for Osco pursuant to the Manufacturing Agreement.  *Id.* ¶¶ 21-22.

In early 2011, Seastar and HIG began to inquire into the purchase of Osco.  Amended Complaint ¶¶ 24-25 (D.I. 19).  As part of this inquiry, Seastar, HIG, Osco and EDI entered into the Confidentiality Agreement on or about July 25, 2011.  *Id.* ¶ 25.

---

[5]    Defendants dispute the facts and allegations set forth in the Amended Complaint.  For the limited purposes of this motion, however, Defendants set forth a brief excerpt of the facts of the case as drawn from the Amended Complaint and the undisputed documentary evidence in order to present background information relevant to this motion.  Although for the purposes of this motion these relevant facts are assumed to be true, to the extent they are not contradicted by documentary evidence as discussed herein, Defendants do not waive any of their objections or defenses to the Amended Complaint.

On or about September 11, 2012, Osco, Seastar and HIG entered into a Letter of Intent, whereby Osco agreed not to solicit or negotiate any other potential agreements regarding the sale of Osco with any other companies.  Amended Complaint ¶ 29 (D.I. 19).  Seastar and HIG agreed to conduct timely due diligence regarding the transaction.  *Id*.  The terms of the Confidentiality Agreement were incorporated within the Letters of Intent.  *Id*.  In late January 2013, Osco, HIG and Seastar allegedly entered into an extension of the Letter of Intent, whereby HIG and Seastar would complete their due diligence. *Id*. ¶ 41.

During the course of their due diligence and investigation regarding the potential purchase of Osco, Seastar and HIG received information regarding, *inter alia*, Osco's pricing, customers, quantities shipped and revenues.  Amended Complaint ¶ 34 (D.I. 19).  Specifically, Plaintiffs allege that Seastar and HIG became aware of the Manufacturing Agreement and the fact that QM had complete control over the Osco product that was being shipped to Osco customers.  *Id*. ¶¶ 35-36.

In November and December 2012, QM's President, Mark Ebbenga ("Ebbenga"), had multiple meetings with Seastar's Vice President of Sales to discuss the potential purchase of Osco. Amended Complaint ¶ 32 (D.I. 19).  Plaintiffs claim that during these meetings, Ebbenga and Seastar's Vice President of Sales developed a plan whereby QM would sell Osco products directly to Seastar without Osco's involvement.  *Id*. ¶ 33.  Plaintiffs allege that Seastar communicated directly with QM regarding the possibility of obtaining Osco manifolds directly from QM.  *Id*. ¶ 37.  As a result of these conversations, Plaintiffs further allege that QM contacted Osco to request approval to sell Osco products and manifolds directly to Seastar.  *Id*. ¶ 39.  Osco, relying on the Manufacturing Agreement, denied QM's request.  *Id*. ¶ 40.  Plaintiffs also allege that Osco informed Seastar that all orders for Osco products had to go through Osco

and could not be transmitted through QM.  *Id.* ¶ 38.  Nonetheless, Plaintiffs now claim that

Seastar began purchasing Osco products directly from QM.  *Id.* ¶ 44.

Sometime after February 2013, Seastar and HIG discontinued their due diligence

regarding the purchase of Osco and decided against purchasing Osco.  Amended Complaint ¶ 42

(D.I. 19).

On May 30, 2013, Osco filed a Demand for Arbitration against QM before the American

Arbitration Association ("AAA"),[6] claiming that QM had (i) materially breached the

Manufacturing Agreement by selling Osco product to Osco's customers, and (ii) tortiously

interfered with the sale of Osco to a third-party (the "Osco Demand for Arbitration").  Freebery

Dec., Exhibit E.  Osco is seeking $150,000 to $300,000 in damages, attorneys' fees and an

injunction against QM.  *Id.*

On June 12, 2013, QM filed its own Demand for Arbitration against Osco, EDI and

Glenn R. Cummins, Jr. ("Cummins"), EDI's Chief Executive Officer and controlling

shareholder, before the AAA (the "QM Demand for Arbitration").[7]  In the QM Demand for

Arbitration, QM denies that it breached the Manufacturing Agreement and claims, *inter alia*, that

the Manufacturing Agreement was cancelled on February 28, 2013, as a result of Osco's failure

to cure its payment defaults and by the agreement of the parties.   Freebery Dec., Exhibit F ¶ 17.

Osco responded in a Statement of Claim, dated July 1, 2013 (the "Osco Statement of Claim"),[8]

that, *inter alia*, the Manufacturing Agreement was not cancelled on February 28, 2013 because

---

[6]      A copy of Osco's Demand for Arbitration is attached to the accompanying Freebery Dec.
as Exhibit E.

[7]      A copy of QM's Demand for Arbitration is attached to the accompanying Freebery Dec.
as Exhibit F.

[8]      A copy of Osco's Statement of Claim is attached to the accompanying Freebery Dec. as
Exhibit G.

Cummins was fraudulently induced into agreeing to such a cancellation.  Freebery Dec., Exhibit

G at 3.

QM and Osco/EDI are scheduled for arbitration in Minneapolis, Minnesota on November

11-13, 2013.  Amended Complaint ¶ 48 (D.I. 19).

## IV.    ARGUMENT

### A.    Legal Standards

**Rule 12(b)(6):** Pursuant to Rule 12(b)(6), the court may dismiss a complaint for failure to

state a claim upon which relief may be granted.  Rule 12(b)(6).  "To survive a motion to dismiss,

a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that

is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  On a motion to dismiss, the

court must accept as true all material allegations of the complaint. *Spruill v. Gillis*, 372 F.3d 218,

223 (3d Cir. 2004).  However, a plaintiff must provide more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do.  *Bell Atlantic Corp. v.

Twombly*, 550 U.S. 544, 555 (2007).  At bottom, the "complaint must state enough facts to raise

a reasonable expectation that discovery will reveal evidence of the necessary element."

*Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal

quotations omitted).  A court need not credit a complaint's bald assertions or legal conclusions

when deciding a motion to dismiss. *Morse v. Lower Merion Sch. District*, 132 F.3d 902, 906 (3d

Cir. 1997).

**Stay Proceedings**: "The decision to grant or deny a stay is within the court's broad range

of discretionary powers." *Enhanced Security Research, LLC v. Cisco Systems, Inc.*, 2010 WL

2573925, at *3 (D. Del. June 25, 2010).  Courts typically consider three factors in determining

whether a stay is appropriate: (i) whether the granting of a stay would cause the non-moving

party to suffer undue prejudice from any delay or allow the moving party to gain a clear tactical

advantage over the non-moving party; (ii) whether a stay will simplify the issues for trial; and (iii) whether discovery is complete and a trial date set. *Apotex, Inc. v. Senju Pharmaceutical Co., Ltd.*, 921 F. Supp. 2d 308, 313-314 (D. Del. 2013).

**B.     The Manufacturing Agreement, Confidentiality Agreement
and Letters of Intent Should be Considered on this Motion to Dismiss**

A document integral to or explicitly relied upon in the complaint may be considered on a motion to dismiss without converting the motion into one for summary judgment. *Angstadt v. Midd-West School District*, 377 F.3d 338, 342 (3d Cir. 2004).  A document will be considered integral to the complaint where the plaintiff's claim cannot be evaluated without some reference to that document. *Id.*

The Manufacturing Agreement, Confidentiality Agreement and Letters of Intent are clearly integral to the Amended Complaint.  Osco's first cause of action for tortious interference with contractual relations and second cause of action for an injunction are based upon the existence and validity of the Manufacturing Agreement.  Osco's third cause of action for breach of the Confidentiality Agreement relies upon the very language of that agreement.  And the fourth claim for breach of the duty to negotiate in good faith stands or falls with the language of the Letters of Intent.  Moreover, each of these three documents are explicitly referred to and relied upon in the Amended Complaint.  Therefore, these documents may be considered on this motion to dismiss.

**C.     Count Two for Injunctive Relief Should
be Dismissed Pursuant To Rule 12(b)(6)**

In count two, Plaintiffs seek a preliminary injunction preventing Seastar from ordering Osco products directly from QM.  Amended Complaint ¶¶ 60-70 (D.I. 19).  In determining whether a preliminary injunction should be issued, a court considers the following factors: (1) the likelihood that the moving party will succeed on the merits; (2) the extent to which the

moving party will suffer irreparable harm without injunctive relief; (3) the extent to which the nonmoving party will suffer irreparable harm if the injunction is issued; and (4) the public interest. *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 562 F.3d 553, 556 (3d Cir. 2009). Plaintiffs plainly fail to satisfy this standard.

First, Plaintiffs make absolutely no showing of their likelihood of success on the merits. The conclusory and unsubstantiated allegations of the Amended Complaint do not demonstrate a likelihood of success.  In fact, this motion to dismiss demonstrates that Plaintiffs' claims are *without* merit and that Plaintiffs are *not* likely to succeed.   Additionally, QM's filings in the related arbitration indicate that the Manufacturing Agreement was cancelled on February 28, 2013, as a result of *Osco's* failure to cure its payment defaults and by the agreement of the parties.  Freebery Dec., Exhibit F ¶ 17.  If true, Plaintiffs have absolutely *no* chance of succeeding on their first and second claims.

Second, Plaintiffs have not, and cannot, demonstrate that they will suffer irreparable harm without injunctive relief.  "The preliminary injunction device should not be exercised unless the moving party shows that it specifically and personally risks irreparable harm." *Liberty Lincoln-Mercury*, at 557 (quoting *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 487 (3d Cir. 2000)).  The Third Circuit has "long held that an injury measured in solely monetary terms cannot constitute irreparable harm." *Id.* at 557 (citing *Bennington Foods LLC v. St. Croix Renaissance, Group, LLP*, 528 F.3d 176, 179 (3d Cir. 2008)).  An injunction will not issue where the claimed injury constitutes a loss of money, a loss capable of recoupment in a proper action at law. *Id.*

The crux of Plaintiffs' claim for damages is that Osco has lost the sales of Osco product to Seastar, allegedly one of Osco's largest customers.  Amended Complaint ¶ 66 (D.I. 19).

Plaintiffs' damages are solely the loss of revenue, which is capable of recoupment in a proper action at law. *See Liberty Lincoln-Mercury*, at 555-557 (Ford Motor Company's imposition of a fee program increasing the wholesale price of vehicles delivered to Ford franchisees in New Jersey did not constitute non-monetary injury and an injunction was not warranted).  Therefore, an injunction is improper.

Plaintiffs desperately attempt to satisfy the Third Circuit's requirements for a preliminary injunction by alleging that Osco's "operating status and relationships with its customers and potential customers are in continuing peril and jeopardy."  Amended Complaint ¶ 67 (D.I. 19).  Along with their other attempts to allege irreparable harm, this allegation also fails.  First, any injury to Osco's operating status and relationships with its customers is again compensable by money damages.  Second, Plaintiffs provide no support for this bold allegation – no actual or potential customers or relationship are identified.  Such a conclusory  and speculative allegation cannot justify a preliminary injunction. *Giftango, LLC v. Rosenberg*, 2013 WL 596138, at *11 (D. Or. Feb. 15, 2013) (plaintiff failed to make the requisite showing of irreparable harm to justify a preliminary injunction where plaintiff provided no evidence that the claimed loss of customers or goodwill was real and imminent, and not just speculative or potential); *Intel Corp. v. ULSI System Technology, Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993) ("[A] preliminary injunction is a drastic and extraordinary remedy that is not to be routinely granted.").

Third, an injunction against Seastar constitutes an unwarranted restriction on Seastar's right to conduct business freely.  Seastar is not a party to the Manufacturing Agreement.  Amended Complaint ¶ 61 (D.I. 19).  Nor is Seastar alleged to be a party to any contract requiring it to purchase manifolds from Osco.  Osco must look to QM, its co-signatory on the Manufacturing Agreement, for the remedy sought herein – which it already has.  *See* Freebery

Dec. Exhibits E and G.  QM's allegedly improper sale of manifolds to Seastar is an issue more appropriately dealt with by the American Arbitration Association in the pending arbitration between Osco/EDI and QM.

**D.     Count Three for Breach of Contract
        Should be Dismissed Pursuant to Rule 12(b)(6)**

In their third count, Plaintiffs claim that Defendants breached the Confidentiality Agreement, wherein the parties thereto agreed to keep exchanged information confidential. Amended Complaint ¶ 72 (D.I. 19).  Specifically, Plaintiffs allege that during negotiations to purchase Osco, Defendants became aware that QM had complete control over the Osco product that was shipped to Seastar as a result of the Manufacturing Agreement.  *Id.* ¶ 74.  Plaintiffs further allege that Seastar discussed that information with QM in an attempt to circumvent the Manufacturing Agreement.  *Id.* ¶ 75.

There are three elements of a breach of contract claim under Delaware law: (1) the existence of a contract; (2) a breach of an obligation imposed by that contract; and (3) damages resulting from the breach. *Millett v. Truelink, Inc.*, 533 F. Supp. 2d 479, 487-488 (D. Del. 2008). Plaintiffs cannot satisfy the second element for two reasons: (i) Defendants' *use* of confidential information is not prohibited by the Confidentiality Agreement; and (ii) Defendants did not disclose any *confidential information*.  Additionally, Plaintiffs cannot satisfy the third element of damages.

According to the Confidentiality Agreement, Osco was to make certain information concerning the business, financial condition and operations  of Osco (the "Evaluation Material") available to HIG and its representatives in connection with the potential transaction.  Freebery Dec., Ex. D (Confidentiality Agreement) at introductory paragraph.  HIG and its representatives

agreed to "keep confidential" the Evaluation Material.  *Id.* ¶ 2.  Explicitly excepted from the

definition of Evaluation Material is information that is generally available.  *Id.* ¶ 1.

The essence of Plaintiffs' claim for breach of contract is that Seastar *used* the information

provided to it during negotiations to establish a business relationship with QM to the detriment

of Osco.  *See* Amended Complaint ¶ 78 ("Seastar and H.I.G. used the information provided by

Osco under the protections of the Confidentiality Agreement for their own advantages and to the

detriment of Osco.") (D.I. 19).  The Confidentiality Agreement, however, does not prevent

Seastar or HIG from *using* Evaluation Material; it only precludes *disclosure* of Evaluation

Material.  Thus, even if Defendants used their knowledge of the Manufacturing Agreement to the

detriment of Osco, this does not violate the Confidentiality Agreement.

Plaintiffs' claim also fails because Seastar did not disclose any *confidential information*.

Plaintiffs allege that Seastar discussed with QM the fact that QM had complete control over the

Osco product that was being shipped to Seastar.  This information was clearly already in the

possession of, and generally available to, QM as a co-signatory of the Manufacturing Agreement.

Seastar did not provide QM with any information it did not already have.  Thus, no confidential

information was exchanged.

Furthermore, even if Seastar did breach the Confidentiality Agreement by discussing this

information with QM, that breach was not material and did not cause any damages.  Since QM

was already aware that it had complete control over the Osco product that was being shipped to

Seastar, Seastar's alleged *discussion* of this fact with QM could not have caused any damages.

Seastar did not disclose to QM any information of which QM was not already aware.  The

disclosure was therefore harmless.

**E.      Count Four for Breach of the Duty to Negotiate in
Good Faith Should be Dismissed Pursuant to Rule 12(b)(6)**

Plaintiffs' fourth cause of action alleges that Defendants breached the duty to negotiate in good faith.  Although the basis for this claim is unclear, Plaintiffs appear to be alleging that Defendants acted in bad faith by discontinuing negotiations after discovering the existence of the Manufacturing Agreement.  Amended Complaint ¶¶ 80-89 (D.I. 19).  This claim is without merit.

First, Defendants are not aware of any statutory or common law duty to negotiate in good faith under Delaware law.  Nor does Plaintiffs' Amended Complaint cite to any case law or statutes.

Second, neither the Confidentiality Agreement nor the Letters of Intent impose any contractual duty to negotiate in good faith.  Consistent with this, Plaintiffs do not rely upon any particular provision of these agreements or refer to any other document imposing such an obligation.  In fact, paragraph 8 of the September 11, 2012 Letter of Intent states as follows:

> [T]he parties acknowledge that they neither intend to enter, nor have they entered, into any agreement to negotiate a definitive written agreement pursuant to this letter.  Either party may, at any time prior to the execution of such a definitive written agreement, propose different terms from those summarized herein or unilaterally terminate all negotiations pursuant to this letter without any liability whatsoever to the other party.

Freebery Dec., Exhibit C ¶ 8.

Paragraph 8 is completely antithetical to an agreement to negotiate in good faith.  That provision expressly provides that the parties *did not* enter into any agreement to negotiate, let alone negotiate in good faith.  Further, the provision permitting either party to unilaterally terminate all negotiations without liability further confirms the absence of any agreement to negotiate.  What is more, Plaintiffs do not even allege that Defendants acted in bad faith.  The

unambiguous language of the September 11, 2012 Letter of Intent precludes Plaintiffs' claim for breach of the duty to negotiate in good faith. *See Osborn v. Kemp*, 991 A.2d 1153, 1159-1160 (Del. 2010) (a court must (1) read a contract as a whole and give each provision and term effect and (2) give effect to the plain-meaning of the contract's unambiguous terms and provisions).

Third, even if there was a contractual duty to negotiate in good faith, which there is not, damages consisting of Osco's lost sales of its product to Seastar is not a valid form of relief under Delaware law.  A plaintiff commencing an action for breach of the duty to negotiate in good faith is, in essence, claiming that but for the defendant's conduct, a contract could have been entered into.  Consistent with this, the Supreme Court of Delaware has recognized two types of damages for a breach of the contractual duty to negotiate in good faith: (1) reliance damages, measured by plaintiff's actually-incurred costs and expenses, where the parties would *not* have reached an agreement even absent defendant's bad faith; and (2) expectation damages, where the parties *would have* reached an agreement but for the defendant's bad faith. *SIGA Technologies, Inc. v. Pharmathene, Inc.*, 2013 WL 2303303, at *11-12 (Del. May 24, 2013).

Plaintiffs' claim for lost sales of Osco product to Seastar constitutes neither form of damages.  A plaintiff commencing an action for breach of the duty to negotiate in good faith alleges that but for the defendant's conduct, a contract could have been entered into.  Plaintiffs' claim for damages, on the other hand, is based upon the reverse assumption that the parties would *not* have entered into a contract.  Osco's claim for lost sales makes no sense in the context of a claim for breach of the duty to negotiate in good faith and flies in the face of controlling Delaware law.  As a result, this claim must be dismissed in its entirety.

Notably, as a direct result of Defendants' first motion to dismiss, Plaintiffs have slightly modified the damages sought in the Amended Complaint's fourth cause of action.  In the

Complaint, Osco stated that "[a]s a result of said actions, Osco has suffered significant monetary damages, plus the loss of additional sales not yet known which discovery will reveal." Complaint ¶ 75 (D.I. 1).  In the Amended Complaint, Plaintiffs now state that "[a]s a result of said actions, Osco has suffered significant monetary damages, based on H.I.G.'s and Seastar's failure to purchase Osco, plus additional damages not yet known which discovery will reveal." Amended Complaint ¶ 89 (D.I. 19).

This modified allegation is completely unsupported and is, without question, a baseless allegation made up out of whole cloth in an attempt to conform the pleadings to the requirements of Delaware law.  In fact, in the very next paragraph, Plaintiffs demand judgment in an amount in excess of $75,000, "in addition to the loss of ***additional*** sales not yet known which discovery will reveal." *Id.* p. 13 (emphasis added).  Clearly, this lawsuit is about sales Osco has lost by losing the Seastar account.  Additionally, and as previously stated, the Letters of Intent expressly state that they are non-binding, do not obligate any party to consummate the Transaction, and permit any party to unilaterally terminate all negotiations without liability.  Freebery Dec., Exhibit C ¶ 8.

Moreover, Plaintiffs do not even specify whether the damages they now claim are reliance damages or expectation damages.  Nor do Plaintiffs state whether Osco and Defendants would or would not have reached an agreement absent Defendants' alleged bad faith.   In sum, this baseless, unsupported new allegation does not save the fourth cause of action from dismissal.

**F.      This Action Should be Stayed Pending the Resolution of the Arbitration Between Osco/EDI and QM, Currently Scheduled for November 11-13, 2013**

This Court should stay this case pending the resolution of the imminent arbitration between Osco/EDI and QM.

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with the economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Maloney v. Gordon*, 328 F. Supp. 2d 508, 511 (D. Del. 2004) (quoting *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936)). In fact, the Third Circuit recognizes that, "it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court…as a matter of its discretion to control its docket." *Mendez v. Puerto Rican International Companies, Inc.*, 553 F.3d 709, 712 (3d Cir. 2009) (quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 20, n. 23 (1983)).

Here, all three factors to be considered in determining whether a stay is appropriate favor staying this case pending resolution of the related arbitration between QM and Osco/EDI. First, this case would only need to be stayed for a few months since the arbitration is imminently scheduled for November 2013. Such a short stay cannot prejudice Plaintiffs or provide any tactical advantage to Defendants.

Second, this case is in its earliest stages. No discovery has been exchanged, depositions have not been held and a trial date has not been set. In fact, Defendants have not even answered, and will not do so until a decision is rendered on this motion.

Third, a stay has the potential to eliminate or narrow Plaintiffs' claims in this case. In the arbitration, Osco/EDI claim, *inter alia*, that QM materially breached the Manufacturing Agreement by selling Osco product to Osco's customers. Freebery Dec., Exhibits E and G. QM denies that it breached the Manufacturing Agreement and claims that the Manufacturing

Agreement was cancelled on February 28, 2013, as a result of Osco's failure to cure its payment defaults and by the agreement of the parties.  *Id.*, Exhibit F ¶ 17.

In this action, Plaintiffs allege that Defendants tortiously interfered with the Manufacturing Agreement by purchasing Osco product directly from QM after February 2013. Amended Complaint ¶¶ 42-44, 50-59 (D.I. 19).  If the arbitration panel determines that QM did not breach the Manufacturing Agreement with Osco and was permitted to sell directly to Seastar – both issues to be decided in the arbitration – Plaintiffs' claims for tortious interference with contractual relations and injunctive relief necessarily fail.

Without a breach of the Manufacturing Agreement by QM, Plaintiffs have no claim for tortious interference with that contract. *Kuhn Construction Co. v. Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 531 (D. Del. 2012) (a claim for tortious interference with contractual relations requires proof of five elements: (i) a contract, (ii) about which the defendant knew, (iii) an intentional act that is a significant factor in ***causing the breach of contract***, (iv) without justification, and (v) which causes injury) (emphasis added); *TruePosition, Inc. v. Allen Telecom, Inc.*, 2003 WL 151227, at *2 (D. Del. Jan. 21, 2003) ("Without a breach, there is no viable tortious interference claim.  As to this point, Delaware law is well-settled...[T]here is no conduct that could constitute the tort of interference with a contract, unless a breach of that contract results").  Thus, a stay will prevent the unnecessary expenditure of time and resources, both of the Court and the litigants.

Therefore, a stay is warranted here. *See Apotex, Inc.*, 921 F. Supp. 2d at 313-316 (staying the action pending resolution of a related appeal because (i) the appeal could eliminate or narrow some of the claims, and prevent unnecessary expenditure of time and resources; and (ii) there had not yet been any discovery, a scheduling conference or the filing of an answer in the action);

*Enhanced Security Research, LLC*, 2010 WL 2573925, at *3 (staying the action pending the U.S. Patent and Trademark Office's reexamination of patents-in-suit because (i) no trial date had been set and discovery was not yet complete; (ii) there was a strong likelihood that a stay would simplify the issues; and (iii) the claim of prejudice by the party opposing the stay was speculative).

## CONCLUSION

WHEREFORE, Defendants respectfully request that this Court grant their motion in its entirety, along with granting Defendants their costs, fees and such other and further relief as is warranted under the circumstances.

Dated:  August 23, 2013
          Wilmington, DE

                                                      McCARTER & ENGLISH, LLP

                                                      /s/ James J. Freebery
                                                      James J. Freebery (DE #3498)
                                                      Daniel J. Brown (DE #4688)
                                                      Renaissance Centre
                                                      405 N. King Street 8th Floor
                                                      Wilmington, DE 19801
                                                      Tel: (302) 984-6300
                                                      Fax: (302) 984-6399
                                                      *jfreebery@mccarter.com*
                                                      *djbrown@mccarter.com*

OF COUNSEL:

Jason S. Oletsky (admitted *pro hac vice*)
**AKERMAN SENTERFITT LLP**                            Attorneys for Defendants
350 East Las Olas Blvd., St. 1600
Ft. Lauderdale, FL 33301
(954) 463-2700
jason.oletsky@akerman.com

-and-

Scott M. Kessler (admitted *pro hac vice*)
**AKERMAN SENTERFITT LLP**
666 Fifth Avenue, 20th Floor
New York, NY 10103
(212) 880-3800
scott.kessler@akerman.com