**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

_____

OSCO MOTORS COMPANY, LLC                          :
d/b/a OSCO MOTORS CORPORATION
and ENGINE DISTRIBUTORS, INC.                     :

            Plaintiff                          :

      v.                                        :          CASE NO.: 13-cv-868-RGA

MARINE ACQUISITION CORP.                          :
d/b/a SEASTAR SOLUTIONS
f/k/a TELEFLEX MARINE and                         :
HIG MIDDLE MARKET, LLC.

                            :
            Defendants.
_____

**PLAINTIFFS' OPPOSITION BRIEF TO DEFENDANTS' MOTION TO**
**DISMISS CLAIMS TWO, THREE AND FOUR and TO STAY ALL PROCEEDINGS**

TYBOUT REDFEARN & PELL
Seth J. Reidenberg (DE# 3657)
750 Shipyard Drive, Suite 400
Wilmington, DE 19801
Tel.   302.658.6901
Fax: 302.658.4018
Sreidenberg@trplaw.com
       And
Alan L. Frank (admitted *pro hac vice*)
ALAN L. FRANK LAW ASSOCIATES, P.C.
135 Old York Road
Jenkintown, PA 19036
Tel.: 215.935.1000
Fax: 215.935.1110
afrank@alflaw.net


Attorneys for Plaintiffs

Dated:     September 16, 2013

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

I.        NATURE AND STAGE OF PROCEEDINGS .....................................................1

II       SUMMARY OF ARGUMENT ...........................................................................1

III      STATEMENT OF FACTS ...................................................................................2

IV      ARGUMENT .......................................................................................................6

           A.       Count II of the Amended Complaint Sets Forth an
                     Appropriate and Viable Claim for Preliminary
                     Injunctive Relief....................................................................................7

           B.       Count III of the Amended Complaint Sets Forth an
                     Appropriate Breach of Contract Claim against
                     Defendants for Breaching the Confidentiality Agreement ...................11

           C.       Defendants' Actions as Plead in the Amended Complaint
                     Support a Claim for Breach of Duty to Negotiate in
                     Good Faith ...........................................................................................14

           D.       This Actions Should Not be Stayed Pending the Resolution
                     of the Arbitration between Plaintiffs and QM .....................................16

CONCLUSION.................................................................................................................17

## **TABLE OF AUTHORITIES**

*ASB Allegiance Real Estate Fund v. Scion Breckenridge Managing*
   *Member, LLC,* 50 A.3d 434, 440-42 (Del. Ch. 2012)
   *aff'd in part, rev'd in part on other grounds,* 68 A.3d 665
   (De. May 9, 2013)...................................................................................15

*Acierno v. New Castle County,* 40 F.3d 645, 653 (3d Cir. 1994) .................................... 8

*Adams v. Freedom Forge Corp.,* 204 F.3d 475, 484 (3d Cir. 2000) ..........................8, 11

*Allegheny Energy, Inc. v. DQE, Inc.,* 171 F.3d 153 (3d Cir. 1999)................................ 8

*Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009)........................ 7

*AT&T v. Winback & Conserve Program, Inc.,* 42 F.3d 1421, 1427 (3d Cir. 1994)....................11

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (2007)...........6

*Cincinnati SMSA Ltd. Partnership v. Cincinnati Bell Cellular,*
708 A. 2d 989 (Del. 1998) ........................................................................14, 15

*Dunlap v. State Farm Fire and Cas. Co.,* 878 A.2d 434 (De. 2005)......................14, 15

*Flowerserve Corp. v. Burns International Services Corp.,* 423 F. Supp. 2d 433,
   2006 U.S. Dist. LEXIS 12300 (Delaware 2006) ..................................................8

*Freedom Holdings, Inc. v. Spitzer,* 408 F.3d 112, 114 (2d Cir. 2005) ...........................8

*Gerber v. Enter. Prods. Holdings, LLC,* 67 A.3d 400,418 (Del. 2013)........................15

*Hybritech, Inc. v. Abbott Labs.,* 849 F.2d 1446, 1451 (Fed. Cir. 1988) ........................8

*In re Burlington Coat Factory Sec. Litig.* 114 F.3d 1410, 1420 (3d Cir. 1997)...........................6

*Katz v. Oak Industries, Inc.,*508 A.2d 873, 880 (Del. Ch. 1986)  ................................15

*Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993) ........................................... . .. 10

*L & W Ins., Inc. v. Harrington,* 2007 Del. Ch. LEXIS 36 (Del. Ch. Mar. 12, 2007) ....................9

*Lorillard Tobacco Co. v. Am. Legacy Found.,* 903 A.2d 728, 739 (Del. 2006)...........................13

*Maio v. Aetna, Inc.,* 221 F.3d 472, 481-82 (3d Cir.2000)........................................6

*Martin Marietta Materials, Inc. v. Vulcan Materials Co.,* 2012 Del. LEXIS 342
    (Del. July 10,   2012) ........................................................................13

*Paul v. Intel Corp. (In re Intel Corp. Microprocessor Anti-Trust Litig.),*
    496 F. Supp. 2d 404, 407 (D.Del. 2007).........................................10

*Pension Benefit Guar. Corp. v. White Consol. Indus. Inc.,* 998 F.2d 1192, 1196
    (3d Cir. 1993)..................................................................................10

*Schrier v. University of Colorado,* 427 F.3d 1253, 1268 (10th Cir. 2005)........................................8

*Spruill v. Gillis,* 372 F.3d 218, 223 (3d Cir. 2004) ........................................6

*Victaulic Co. v. Tieman,* 499 F.3d 227, 234 (3d Cir. 2007).............................................................

*Wilgus v. Salt Pond Inv. Co.,* 498 A.2d 1561, 159 (Del. Ch. 1985) ...............................................14

*Wilkerson v. New Media Tech. Charter Sch. Inc.,* 522 F.3d 315, 321 (3d Cir. 2008)....................7

## **RULES**

Fed. R. Civ. P. 12(d). ............................................................................ 9 fn,10

4

## I.    NATURE AND STAGE OF PROCEEDINGS

Plaintiff, Osco Motors Company, LLC ("Osco") filed its original Complaint against

Defendants Marine Acquisition Corp. d/b/a Seastar Solutions f/k/a/ Teleflex Marine and H.I.G.

Middle Market, LLC (collectively "Seastar Defendants") on May 17, 2013.   (D.I. 1).   The

Complaint alleged four distinct causes of action including: tortious interference with contractual

relations; breach of contract; breach of the duty to negotiate in good faith, and seeking injunctive

relief.

On July 22, 2013, Defendants filed a Motion to Dismiss pursuant to Federal Rules of Civil

Procedure 12(b)(1) and 12(b)(6).   (D.I. 12).   On or about August 6, 2013, Osco filed an Amended

Complaint adding Osco Motors Corporation and Engine Distributors as Plaintiffs.   (D.I. 19).

The causes of action contained in the original Complaint and Amended   Complaint are identical.

In response, Defendants have filed their Motion along with accompanying Opening Brief   to

Dismiss the second, third and fourth causes of action of the Amended Complaint pursuant to Rule

12(b)(6) and requesting a stay of this case.

The parties have yet to engage in any discovery and a Rule 16 Scheduling Conference has

not been scheduled let alone conducted.

## II.    SUMMARY OF ARGUMENT

1.  The Plaintiffs have set forth sufficient allegations to state a claim for injunctive relief

    against the Seastar Defendants.   Based on the Seastar Defendants' conduct, Plaintiffs

    have demonstrated that they have suffered irreparable harm in the form of lost goodwill

    with their business relationships and customers.

2. The Plaintiffs have demonstrated that their Amended Complaint states a claim for breach of contract by the Seastar Defendants.   Plaintiffs have sufficiently pled that the Seastar Defendants used and disclosed Plaintiffs' valuable confidential information including pricing and client information in order to undermine the Plaintiffs in breach of the Confidentiality Agreement.

3. The Plaintiffs have sufficiently pled a breach of the duty to negotiate in good faith by asserting that the Seastar Defendants used information they obtained during due diligence from Plaintiffs to the Plaintiffs' detriment in contravention of the Letter of Intent and in violation of the Seastar Defendants' duty.

4. Finally, implementing a stay in this matter until the arbitration between Plaintiffs and Quality Mark is not appropriate because the arbitration is not imminent and staying these proceedings would continue to award the Seastar Defendants for their inappropriate behavior.

## III.   STATEMENT OF FACTS

Plaintiff Osco Motors Company, LLC ("Osco") produces and distributes marine engines, manifolds, risers, and accessory parts. (D.I. 19 at ¶ 7).   Osco is a wholly owned subsidiary of Engine Distributors, Inc. ("EDI") (EDI and Osco are collectively referred to as "Plaintiffs").   (*Id.* at ¶ 8.)   Defendant Marine Acquisition Corp. d/b/a Seastar Solutions f/k/a Teleflex Marine ("Seastar") is an end producer of finished marine boats and boating products. (*Id.* at ¶ 10).   Seastar regularly purchases products made by Osco and utilizes these products in these aforementioned finished marine boats and boating products.   These products include manifolds produced by Osco. (*Id.*)

6

Seastar operates and manages multiple marine brands including, *inter alia*, Sierra Engine and Drive Parts ("Sierra").   (*Id.* ¶ 11.)   Defendant H.I.G. Middle Market, LLC ("H.I.G.") is a private equity and venture capital investment firm and Seastar's partner and equity sponsor (H.I.G. and Seastar are collectively referred to as "Defendants") (*Id.* at ¶ 12.)

On January 1, 2011, Osco entered into a manufacturing agreement with Quality Mark, Inc. ("QM") whereby QM would produce manifolds for Osco on an exclusive basis. (*Id.* at ¶ 13.)   The manufacturing agreement also stated that if Osco was sold during the validity of the agreement, the manufacturing agreement would automatically renew under the same terms and conditions with the company that purchased Osco. (*Id.*at ¶ 15.)   Although some confusions occurred initially with the naming of the parties to the agreement, it is clear and undisputed that the parties at all times intended for the manufacturing agreement to be a valid agreement between Osco and QM. (*Id.* at ¶ 18.)

Pursuant to the terms of the manufacturing agreement, QM was not permitted to manufacture Osco products for any other entity except Plaintiffs or to sell Osco products directly to any entity except Plaintiffs. (*Id.* at ¶ 19.)   Osco sold manifolds and other manufactured products to Seastar that were produced pursuant to the manufacturing agreement.   (*Id.* at ¶ 22.)

Defendants began an inquiry into the purchase of Osco and began their investigation under the terms of a Confidentiality Agreement entered into between Osco and Defendants on or about July 25, 2011. (*Id.* at ¶¶ 23-24). The Confidentiality Agreement contemplated a "possible collaboration" between H.I.G. Middle Market, LLC and "EDI/Osco." (*Id.* at ¶ 28.)   On or about September 11, 2012, Osco and with Defendants entered into a letter of intent whereby Osco agreed not to solicit or negotiate any other potential agreements regarding the sale of Osco with any other

companies (the "Letter of Intent")  (*Id.* at ¶ 29).   Defendants agreed to conduct timely due

diligence.   Further, the content of the negotiations regarding Defendants' acquisition were not to

be disclosed to any third parties and the terms of the July 25, 2011 Confidentiality Agreement were

incorporated within the Letter of Intent. (*Id.*)

In or about late January 2013, Osco and Defendants entered into a second letter of intent

whereby Defendants would complete their due diligence.   The letter was set to expire at the end of

February 2013. (*Id.* at ¶ 41)   Sometime after February 2013, Defendants discontinued their due

diligence regarding the purchase of Osco and decided against purchasing Osco. (*Id.* at ¶ 42).

Defendants informed Osco that they could not complete the purchase because QM would not abide

the terms of the manufacturing agreement entered into between QM and Osco if Defendants

completed the purchase of Osco. (*Id.* at ¶ 43).

During the course of their investigation regarding the potential purchase of Osco,

Defendants received significant amounts of information regarding, *inter alia*, Osco's pricing,

customers, quantities shipped, and revenues. (*Id.* at ¶ 34).   Additionally, as a result of their

investigation, Defendants became aware of the manufacturing agreement entered into between

Osco and QM and understood the close relationship between Osco and QM. (*Id.* at ¶ 35).   Further,

Defendants learned that, as a result of the manufacturing agreement between QM and Osco, QM

had complete control over the Osco product that was being shipped to Osco customers and the

tooling utilized to manufacture the product.   (*Id.* at ¶ 36)   As a result of this reality, QM could, if

it decided to breach the terms of the extant manufacturing agreement between QM and Osco, ship

Osco products, or products manufactured with the tooling jointly owned by Osco and QM, directly

to any customer it saw fit.   (*Id.*)

8

After obtaining this information, upon information and belief, Sierra communicated directly with QM regarding the possibility of obtaining Osco manifolds directly from QM. (*Id.* at ¶ 37).   After this communication, Osco informed Sierra that all orders for Osco products must go through Osco and could not be transmitted through QM.   (*Id.* at ¶ 38).   Following this communication, QM contacted Osco and requested approval from Osco to sell Osco products and manifolds directly to Sierra.   Osco, relying on the manufacturing agreement, denied QM's request to sell Osco product directly to Sierra.   (*Id.* at ¶¶ 39-40).

Subsequently, despite being explicitly prohibited by Osco, Sierra nonetheless purchased Osco products directly from QM. (*Id.* at ¶ 44).   Neither Sierra, Seastar, nor H.I.G. informed Osco of Sierra's purchase at the time of the purchase.   (*Id.*)   Upon information and belief, Defendants have claimed ownership of tooling that is presently jointly owned by QM and Osco pursuant to the terms of the manufacturing agreement. (*Id.* at ¶ 45.)   Defendants have entered into arrangements with QM to control the production of Osco product and the use of Osco tooling that is presently controlled by QM but jointly owned by Osco and QM.   (*Id.* at ¶ 46).

The manufacturing agreement contains a mediation and arbitration clause requiring disputes arising between the signatories to be resolved through mediation.   (*Id.* at ¶ 20.)   As such, an arbitration is currently scheduled between Osco and QM for January 13-15, 2014 in Minneapolis, Minnesota.

As a result of the Defendants' actions in the instant matter, Plaintiff filed a Complaint alleging Tortious Interference with Contractual Relations, Breach of Contract and Breach of the duty to Negotiate in Good Faith.   Osco also seeks Injunctive Relief against Seastar.   Shortly

thereafter an Amended Complaint was filed as of right as no responsive pleading was filed.   No

new causes of action were asserted.

Defendants have filed the instant Motion to Dismiss seeking dismissal of Counts Two,

Three and Four and requesting a stay of any and all proceeding until the arbitration involving QM

is completed.   For the reasons set forth below, Defendants' Motion should be dismissed.   Even if

this Honorable Court were to grant all or portions of Defendants Motion to Dismiss, at this early

stage of the proceedings, Plaintiffs respectfully request that any Order be entered without

prejudice allowing Plaintiffs the opportunity to amend the Complaint.

## IV.    ARGUMENT

Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material

allegations of the Complaint.   *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004).   "The issue

is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer

evidence to support the claims."   *In re Burlington Coat Factory Sec. Litig.* 114 F.3d 1410, 1420

(3d Cir. 1997).   As such, the Court may grant such a motion to dismiss only if, after "accepting all

well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to

plaintiff, plaintiff is not entitled to relief."   *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d

Cir.2000).

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief

above the speculative level on the assumption that the allegations in the complaint are true (even if

doubtful in fact).'"   *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007)(quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (2007)).   Heightened

fact pleading is not required-merely "enough facts to state a claim to relief that is plausible on its

face" must be alleged. *Twombly*, 550 U.S. at 570.   A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009).

"The complaint must state enough facts to raise the reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008)(internal quotation marks omitted).   It is clear in the instant matter that Plaintiff has properly plead all causes of action alleged in the Amended Complaint with the requisite amount of notice being afforded Defendants to enable them to defend all counts.

To reiterate the above-referenced standard, Plaintiff does not have to, at this stage in the proceedings, allege each and every fact that supports all causes of action, but must allege enough factual content that demonstrates that Defendants may be liable and are on notice of the basis of the claims asserted against them.   Plaintiff has done just that and as such, Defendants Motion to Dismiss should be denied.

### A.   Count II of the Amended Complaint Sets Forth an Appropriate and Viable Claim for Preliminary Injunctive Relief

In Count II of the Amended Complaint, Plaintiff requests injunctive relief against Defendant Seastar enjoining it from ordering Osco products directly from QM.   In support of this requested relief, Plaintiffs have alleged the loss of goodwill and customers as reputable damages that cannot be cured by money.   Defendants seek dismissal of Count II making the following claims:   Plaintiffs cannot demonstrate a likelihood of success on the merits; Plaintiffs have not demonstrated they will suffer irreparable harm without injunctive relief; and that an injunction

11

against Seastar constitutes an unwarranted restriction on Seastar's right to conduct business freely. All of these arguments by Defendants are baseless.

In determining whether to issue a preliminary injunction courts must determine (1) whether the movant has shown a reasonable likelihood of success on the merits; (2) irreparable harm if an injunction is not granted; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party and whether (4) the granting of the preliminary relief will be in the public interest. *Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153 (3d Cir. 1999). The purpose of a preliminary injunction is to preserve the status quo until the merits of the case have been decided. *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir. 1994). No one of these factors is dispositive; "rather, the district court must weigh and measure each factor against the other factors and against the form and magnitude of the relief requested." *Hybritech, Inc. v. Abbott Labs.*, 849 F.2d 1446, 1451 (Fed. Cir. 1988)).

A showing of irreparable harm has been considered the most important prerequisite for the issuance of an injunction. *See e.g., Flowerserve Corp. v. Burns International Services Corp.*, 423 F. Supp. 2d 433, 2006 U.S. Dist. LEXIS 12300 (Delaware 2006); *Schrier v. University of Colorado*, 427 F.3d 1253, 1268 (10th Cir. 2005); *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005). To that end, the relevant inquiry is whether, at the time the injunctive relief is to be issued, the party seeking the injunction is in danger of suffering irreparable harm. *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 488 (3d Cir. 2000).

In the instant matter, Plaintiffs have demonstrated irreparable harm. Plaintiffs have further demonstrated that granting of injunctive relief will not create a significant detriment to Defendants. Plaintiffs have alleged that as a result of Seastar's ordering Osco product directly

from QM, they have suffered significant damages by losing the sale of Osco products to Seastar, one of Osco's largest customers, as well as by the harm caused to Osco's operating status and relationship with its current and potential customers as a result of Seastar's conduct.   (D.I. 19 at ¶¶ 65-69).

The protection of substantial business relationships and goodwill are legitimate business interests whose impairment gives rise to irreparable harm.   *See, L&W Ins., Inc. v. Harrington*, 2007 Del. Ch. LEXIS 36 (Del. Ch. Mar. 12, 2007).   The loss of goodwill and customers, as alleged by Plaintiffs, are represent irreparable harm that cannot be cured by money demonstrating the need for injunctive relief.   Plaintiffs have clearly demonstrated that they have lost one of their biggest customers-Seastar.   Moreover, it is reasonable to infer, as the Court must do at this early stage of litigation, that Plaintiff's damaged relationship with Seastar is having a reverberating negative effect on Plaintiff's relationships and goodwill with its other customers.   As such, the allegations set forth in Plaintiffs' Amended Complaint are not speculative and properly allege that Osco will suffer irreparable harm.

Additionally, Plaintiffs have demonstrated a likelihood of success on the merits. Defendants rely upon a filing by a non-party to this matter – QM – in an arbitration proceeding, to which Seastar is not a party, as evidence that the Manufacturing Agreement between QM and Osco was cancelled on February 28, 2013.   Defendants then argue that their conduct is excused by allegations contained in that filing to excuse Defendants' conduct and demonstrated that Plaintiffs have no likelihood of success on their first and second claims.[1]   As a preliminary matter, in ruling on a Motion to Dismiss, only those allegations and facts contained within the

---

[1] Although Moving Defendant references Count I of the Amended Complaint in their brief, no argument has been proffered by Defendants that Count I should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

complaint itself can be relied upon by the Court.   *Pension Benefit Guar. Corp. v. White Consol. Indus. Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)(citations omitted).   The filings in a by a non-party in the matter presently before the Court are clearly not factual allegations that the Court can consider.

Any filings by QM or even, for that matter by Osco, in the arbitration matter cannot be utilized by a party to this case to assert facts not of record in the instant action.   Specifically, QM's filings in the arbitration matter are not "fact" but unsubstantiated argument proffered by a party of interest in response to allegations against it.   "The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case." *Paul v. Intel Corp. (In re Intel Corp. Microprocessor Anti-Trust Litig.)*, 496 F. Supp. 2d 404, 407 (D.Del. 2007) citing *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).   Defendants introduction of these factual allegations does not assist the Court in testing the sufficiency of Plaintiffs' complaint but rather only raises factual issues that are not ripe for any type of adjudication at this early stage of litigation.

As such, if this Honorable Court were to allow Defendants to rely on facts not pleaded in the Amended Complaint, Plaintiff contends that the Motion presently before the Court should be converted to a motion for summary judgment, and subsequently denied because the facts relied upon Defendants are specifically denied by Plaintiffs and in dispute.   When a motion to dismiss filed pursuant to Rule 12(b)(6) contains and relies on matters outside the pleadings, not excluded by the Court, it must be treated as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). Moreover, all parties should be given a reasonable opportunity to   present pertinent material after the motion to dismiss is converted to a motion for summary judgment. *Id.*

Only when relevant should a court examine the likelihood of irreparable harm to the nonmoving party and whether the injunction serves the public interest.   *See AT&T v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994); *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484 (3d Cir. 2000).   As Plaintiffs have demonstrated the likelihood of success on the merits and irreparable harm, no further analysis should be required as same is not relevant.   *Id.* Although irrelevant in the instant action, it should be noted that there would be no irreparable harm to Seastar if the injunctive relief is granted.   The only thing that would flow from the Court's issuance of an injunction is that Defendants' continuing misconduct would no longer be rewarded or profitable at Plaintiffs' expense.   As such, Defendants' Motion to Dismiss Count Two should be dismissed.

**B.   Count III of the Amended Complaint Sets Forth an Appropriate Breach of Contract Claim against Defendants for Breaching the Confidentiality Agreement**

As pled in the Amended Complaint, in early 2011, QM's President, Mr. Ebbenga, introduced a Seastar executive to Osco's President, Mr. Cummins, Jr., intending to facilitate Seastar's acquisition of Osco.   (D.I. 19 at ¶ 24.)   The Defendants began their investigation regarding the potential purchase of Osco under the terms of a Confidentiality Agreement entered into by and between Plaintiffs and Defendants on or about July 25, 2011. (*Id.* at ¶ 25).   As a result of the due Defendants' due diligence, the Defendants received significant amounts of information regarding Osco's pricing, customers, quantities shipped and revenues as well as information associated with the manufacturing agreement between QM and Osco.   (*Id.* at ¶ 34-35).   In addition, Seastar and H.I.G. learned that as a result of the manufacturing agreement between QM and Osco, QM had complete control over the Osco product that was being shipped to Osco

customers and the tooling utilized to manufacture the product.   (*Id.* at ¶ 36.)   Based on this understanding, the Defendants became aware that QM could breach the terms of the existing manufacturing agreement between QM and Osco and ship Osco products, or products manufactured with the tooling jointly owned by Osco and QM directly to any customer it saw fit. (*Id.* at ¶ 36-37).

These allegations support, at this stage of the litigation, Osco's claim against Defendants that they the confidential information shared by Osco, including trade secrets, pricing, customer lists, revenues, and information regarding the manufacturing agreement, and ***used and disseminated*** that information in violation of the Confidentiality Agreement.   (*Id.* at ¶ 34, 76-79) Defendants' conduct, as alleged, caused significant damage to Osco and continue to cause damage to Osco to this day.

Defendants attempt to argue that the confidentiality agreement entered into between the parties only prohibits disclosure of confidential information and does not prohibit the use of confidential information.   Defendants further contend that they did not disclose any confidential information.   Despite these blanket assertions, Plaintiff has explicitly pled alleged that Defendants breached the confidentiality agreement as they "disclosed confidential information Osco provided to Seastar and H.I.G. in contemplation of their potential purchase of Osco as confidential."   (*Id.* at ¶ 77.)   Moreover, it is reasonable to infer, which the Court must do at this juncture of the litigation, that the Defendants have disclosed Osco's confidential information relating to pricing, customers, quantities shipped and revenues to QM in order to effectuate the sale of Osco product into the marine market.   (*Id.* at ¶¶ 46-47.)   As described above, all allegations in the Amended Complaint must be accepted as true and Defendants argument that no confidential

16

information was disclosed is more appropriately raised in their Answer or as an Affirmative Defense, not as the basis for a Motion to Dismiss.

Additionally, "[w]hen interpreting a contract, the role of a court is to effectuate the parties' intent." *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006). Absent textual ambiguity, Delaware courts fulfill that role by according to contractual language the ordinary meaning that "a reasonable person in the position of the parties would have thought [the words] meant." *Id.* Defendants do not argue that any provision of the confidentiality agreement is vague or ambiguous. Rather, they attempt to mischaracterize the intent of the parties to the agreement by stating that only disclosure of confidential information results in a breach of the agreement as opposed to the use of confidential information. Moreover, it is reasonable to infer the parties' intent when they entered into a non-confidentiality agreement contemplating a "possible collaboration" was to use the information exchanged towards the contemplated collaboration and not Defendants' deliberate exploitation of confidential information. Defendants' interpretation of the agreement is not only absurd, but inappropriate in a Motion to Dismiss.

It is well established that a confidentiality agreement is intended and structured to prevent a contracting party from ***using and disclosing*** the other party's confidential, nonpublic information except as permitted by the agreement. *Martin Marietta Materials, Inc. v. Vulcan Materials Co.*, 2012 Del. LEXIS 342 (Del. July 10, 2012). To argue otherwise would negate the purpose behind effectuating these types of agreements. As such, Defendants reliance on the distinction between use and disclosure falls flat.

17

In Defendants motion, they only reference allegations in the Amended Complaint that relate to Seastar's discussions with QM relating to the Manufacturing Agreement for the proposition that even if Seastar did breach the Confidentiality Agreement by discussing the Manufacturing Agreement with QM, that breach was not material and did not cause any damages. Plaintiffs, however, specifically allege that Defendants disclosed all the information it obtained from Plaintiffs to QM.   (*See* D.I. 19 at ¶¶ 74-75.)   Unfortunately for Defendants argument, Defendants' disclosed not only disclosed information regarding the Manufacturing Agreement between QM and Osco, but QM also, based on all reasonable inferences, additional confidential information relating to Osco's pricing, customers, quantities of product shipped and revenues. (See *Id.* at ¶¶ 34; 74-75.)   The dissemination of this confidential information was clearly a breach of the Confidentiality Agreement and significantly harmful to Plaintiff Osco.

### C.  Defendants' Actions as Plead in the Amended Complaint Support a Claim for Breach of the Duty to Negotiate in Good Faith

The implied covenant of good faith and fair dealing recognized under Delaware law prohibits acts by one party that deprive another of the fruits of their bargain, even though the challenged conduct is not expressly prohibited by the agreement. *Wilgus v. Salt Pond Inv. Co.*, 498 A.2d 151, 159 (Del. Ch. 1985).   To bring a claim of breach of the implied covenant of good faith and fair dealing, a plaintiff must allege that the breaching party's actions were motivated by an improper purpose reflecting bad faith.  *Dunlap v. State Farm Fire and Cas. Co.,* 878 A.2d 434 (Del. 2005).   However, an implied obligation may not prohibit acts that the terms of the parties' agreement expressly permit, even when the act expressly permitted favors one party's interests.  *Cincinnati SMSA Ltd. Partnership v. Cincinnati Bell Cellular*, 708 A.2d 989 (Del. 1998).   Implied covenant of good faith and fair dealing applies if at the time of contract formation

18

the parties would have proscribed the conduct had they considered the issue involved or thought to

negotiate about the conduct.  *See Katz v. Oak Industries, Inc.*, 508 A.2d 873, 880 (Del. Ch.

1986).  *Cincinnati SMSA Ltd. Partnership*, 708 A.2d at 992; *Dunlap,* 878 A.2d at 442.

 "Under Delaware law, a court confronting an implied covenant claim asks whether it is

clear from what was expressly agreed upon that the parties who negotiated the express terms of the

contract would have agreed to proscribe the act later complained of as a breach of the implied

covenant of good faith—had they thought to negotiate with respect to that matter. While this test

requires resort to a counterfactual world—what if—it is nevertheless appropriately restrictive and

commonsensical."  *Gerber v. Enter. Prods. Holdings, LLC*, 67 A.3d 400, 418 (Del. 2013)

(quoting *ASB Allegiance Real Estate Fund v. Scion Breckenridge Managing Member, LLC*, 50

A.3d 434, 440-42 (Del. Ch. 2012), *aff'd in part, rev'd in part on other grounds*,  68 A.3d 665 (Del.

May 9, 2013)).  "'[G]ood faith' does not envision loyalty to the contractual counterparty, but

rather faithfulness to the scope, purpose, and terms of the parties' contract. Both necessarily turn on

the contract itself and what the parties would have agreed upon had the issue arisen when they

were bargaining originally."  *Id.* at 419.

 Plaintiffs have demonstrated a viable claim for breach of the duty to negotiate in good faith

stemming from Defendants breach of the implied covenant of good faith and fair dealing.   As

discussed, Plaintiffs and the Seastar Defendants entered into a Letter of Intent whereby the Seastar

Defendants would conduct due diligence in order to determine whether or not to complete the

purchase of Osco.   The parties entered into the Letter of Intent agreeing not to disclose the

negotiations of the potential sale and to keep exchanged information confidential.   (*Id.* at ¶ 81).

At the same time, the Letter of Intent provided that Plaintiffs would provide the Seastar

Defendants with a period whereby Plaintffs would not solicit offers or negotiate with any third parties regarding the sale of Osco.   (*Id.* at ¶ 82).

At the time Plaintiffs and the Defendants entered into the Letter of Intent, there is no way the parties could have contemplated or even imagined in their wildest dreams that while negotiating the terms of the potential purchase by the Seastar Defendants of Osco, that the Seastar Defendants would use the information they acquired from Plaintiffs' to negotiate with QM to Plaintiffs' detriment.   Further, when entering into the Letter of Intent, there is no way the parties could have realized that the Seastar Defendants would decline to purchase Osco because the Defendants had determined that, based on information that had been provided during due diligence, it was more beneficial to purchase product directly from QM.   However, as the allegations in the Amended Complaint demonstrate, the Defendants did just that.

Plaintiffs have appropriate pled that Defendants violated the implied covenant of good faith and fair dealing and as such, Defendants' Motion to Dismiss Count Four should be dismissed.

### D.  This Action Should Not be Stayed Pending the Resolution of the Arbitration between Plaintiffs and QM

Defendants argue that because there is a separate arbitration matter involving Plaintiffs and QM relating to the Manufacturing Agreement, that this action should be stayed pending that result. As an initial matter, the arbitration at issue has been continued until January 13, 2014 and can no longer be considered "imminent".   To await resolution of that matter would be extremely prejudicial to Plaintiffs as Defendants behavior would remain unchecked for an unnecessarily protracted period of time with no recourse.   Additionally, although the Manufacturing Agreement is relevant to the instant matter, it bears no effect on whether or not Seastar and HIG breached the terms of the Confidentiality Agreement nor the damages that ensued as a result.

**V.       CONCLUSION**

For the foregoing reasons, Defendants are not entitled to dismissal of any of the Counts in Plaintiffs' Amended Complaint.   Counts Two, Three and Four are properly plead and set forth all the requisite prima facie elements required for each cause of action. Additionally, the granting of a stay pending the tangential arbitration hearing in January 2014 would be extremely prejudicial to Plaintiffs' and would provide Defendants with a clear tactical as well as economic advantage.   As such, Defendants Motion should be denied in its entirety.

TYBOUT REDFEARN & PELL
Seth J. Reidenberg (DE# 3657)
750 Shipyard Drive, Suite 400
Wilmington, DE 19801
Tel.   302.658.6901
Fax: 302.658.4018
Sreidenberg@trplaw.com
        And
Alan L. Frank (admitted *pro hac vice*)
ALAN L. FRANK LAW ASSOCIATES, P.C.
135 Old York Road
Jenkintown, PA 19036
Tel.: 215.935.1000
Fax: 215.935.1110
afrank@alflaw.net


Attorneys for Plaintiffs


Dated:     September 16, 2013

21